IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOSHUA KIERA HOWIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV484 |
| | ) | |
| SGT. TODD J. MCGHEE, SGT. PATRICK | ) | |
| MERRITT, JR., CONCORD POLICE | ) | |
| DEPARTMENT, CAPT. M.P. GREENE, | ) | |
| OFFICER JASON L. OVERCASH, | ) | |
| OFFICER GENE RAMOS, OFFICER S.C. | ) | |
| MEDLIN, OFFICER MICHAEL PRICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION, ORDER AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on a Motion for Summary Judgment [Doc. #50]

filed by the remaining Defendants[1] in this action: Concord, North Carolina, police officers Sgt.

McGhee, Officer Merritt, Captain Greene, Officer Overcash, Officer Ramos, Officer Medlin,

and Officer Price. Plaintiff Joshua Howie, proceeding *pro se*, has responded to Defendants'

Motion. Defendants have also filed a Motion to Strike [Doc. #72], seeking to strike two of

Plaintiff's submissions. For the reasons that follow, the Court denies Defendants' Motion to

Strike, but recommends that Defendants' Motion for Summary Judgment be granted, and that

this action be dismissed.

---

[1] This Court earlier recommended, and the district judge has now ordered, the dismissal of all claims
against Defendant Concord Police Department, as well as all of Plaintiff's claims for punitive damages against
the remaining Defendants in their official capacities. (Order [Doc. #65].)

I.     FACTS, CLAIMS, AND PROCEDURAL HISTORY

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  (Pl.'s Compl. [Doc. #2].)[2]
Plaintiff Joshua Howie is a resident of Concord, North Carolina.  (Id.)  He alleges that the
Concord Police Department and several of its officers "framed" him for drug charges which
were later dismissed, and further harassed him in various ways.  Plaintiff's allegations as to each
of the individual officers is set out in sequence below.

A.     Plaintiff's Claims

With respect to Defendant Sgt. Todd McGhee, Plaintiff alleges that on March 28, 2011,
Sgt. McGhee falsified police reports in a malicious attempt to charge Plaintiff with four drug
offenses, including a felony conspiracy offense.  (Id. at 2.)  These allegedly false charges resulted
in Plaintiff being arrested and imprisoned twice.  (Id.)  Plaintiff claims that these charges arose
from Sgt. McGhee's apprehension of Sebastian Rojas Hernandez on March 28, 2011, with ten
individually wrapped marijuana bags in his possession.  (Id. at 3.)  Plaintiff claims that
Hernandez was used as a "pawn" by Sgt. McGhee to "frame" Plaintiff for drug charges related
to the marijuana seized from Hernandez, while Hernandez was not charged until several weeks
later.  (Id.)  Plaintiff claims that Sgt. McGhee sought to frame Plaintiff because Plaintiff had
refused his offer to become a drug informant following Plaintiff's arrest on separate drug
charges in January 2011.  Plaintiff further alleges that no drugs were found at his residence, on
his scooter, or on his person when he was arrested on March 28, 2011.  (Id.)

---

[2] The Court accepted Plaintiff's amendment to his Complaint, but the amendment was construed to add
to the original Complaint only the allegation that the Defendants were sued in their official and individual
capacities.  (Order [Doc. #25].)

With respect to Defendant Officer Patrick Merritt, Jr., Plaintiff alleges that Officer Merritt conspired with Sgt. McGhee to charge Plaintiff with the March 28 drug offenses. (Id. at 4.) He also contends that Officer Merritt falsified police reports "by pretending to be the arresting officer of Plaintiff . . . on March 28, 2011." (Id.) Finally, Plaintiff claims that Officer Merritt maliciously caused Plaintiff to have to post a $20,000 bond and caused Plaintiff's mother to suffer heart attack symptoms. (Id. at 5.)

With respect to Defendant Officer Jason L. Overcash, Plaintiff alleges that Officer Overcash was the "true arresting officer" on his March 28, 2011 charges. (Id.) Plaintiff states that Officer Overcash swerved in front of Plaintiff while Plaintiff was riding his scooter, jumped out of his police car, and drew his gun when arresting Plaintiff on the allegedly false charges made by Officer Merritt and Sgt. McGhee. (Id. at 6.)

With respect to Defendant Officer S.C. Medlin, Plaintiff claims that Officer Medlin arrested him on April 13, 2011, "for a second false arrest and false imprisonment." (Id.) Plaintiff states that the April 13 arrest occurred because he missed an April 1, 2011 court date on a charge of having no operator's license. (Id.) However, Plaintiff states that he was in custody on April 1 as a result of the charges made by Officer Merritt and Sgt. McGhee, and that Officer Medlin should have known that Plaintiff was in jail on the court date. (Id. at 6-7.)

With respect to Defendant Officer Michael Price, Plaintiff alleges that Officer Price participated with Officer Medlin in the arrest of Plaintiff on April 13, 2011. (Id. at 7.) Plaintiff alleges that Officer Price "knew the same as Medlin that plaintiff was in jail" on the court date. (Id.) Plaintiff states that after being incarcerated about four hours for the failure to appear, the

Clerk of Superior Court saw to Plaintiff's release after Plaintiff's father intervened on Plaintiff's behalf.  (Id.)

With respect to Defendant Officer Gene Ramos, Plaintiff claims that Officer Ramos and other officers harassed Plaintiff on May 27, 2011.  (Id.)  Plaintiff claims that Officer Ramos brought an individual to inspect Plaintiff's scooter to see if it was the same scooter that the individual had reported as being stolen.  Plaintiff says that the individual said that the scooter was not his stolen scooter, but Officer Ramos took photographs of Plaintiff's scooter anyway.  (Id. at 7-8.)  Plaintiff also claims that Officer Ramos was on the scene with his drug dog when Sebastian Hernandez was arrested on April 11, 2011.  Plaintiff claims that the statements made by Hernandez at that time should have "cleared Plaintiff," but that the police wanted a statement from Hernandez to frame Plaintiff.  (Id. at 8.)

With respect to Defendant Captain M.P. Greene, Plaintiff alleges that Captain Greene "intentionally covered up for his mens' corruption in his police investigation."  (Id.)  Captain Green allegedly investigated his officers' conduct but found nothing wrong.  (Id.)

Based on these facts, Plaintiff seeks to raise federal § 1983 claims based on alleged Fourteenth Amendment Due Process Clause and Equal Protection Clause violations, as well as Fourth Amendment and Eighth Amendment violations.  (See Pl.'s Response [Doc. #30].)  Plaintiff also complains of malicious prosecution and false arrest or false imprisonment.  (See Pl.'s Compl. [Doc. #2].)

As relief, Plaintiff seeks a temporary and permanent restraining order against the Concord Police Department to prevent officers from harassing Plaintiff, and punitive and compensatory damages.  (Id. at 9.)

B.    Defendants' Evidence

Defendants have submitted documentary evidence, court records, video recordings, and affidavits in support of their Motion for Summary Judgment.

1.    Officer Price's Affidavit

Defendant Officer Price submitted an affidavit in which he states that he "was not present for, nor did [he] play any part in the Plaintiff, Joshua Howie's arrest at 10:47 a.m. on the Order for Arrest for failure to appear.  Further, I did not arrest Plaintiff at any time on April 13, 2011."  (Price Aff. [Doc. #53].)  He attaches police department records to support his statement. Plaintiff now concedes [Doc. #74 at 4] that he mistakenly identified Defendant Price and that all claims against him should be dismissed.  Therefore, Defendant Price's Motion for Summary Judgment should be granted and all claims against him should be dismissed.

2.    Officer Medlin's Affidavit

Defendant Officer Medlin submitted an affidavit [Doc. #54] stating that on April 13, 2011, he was acting as field training officer for Officer Payne.  They were patrolling when they saw Plaintiff Howie and recognized him as a suspect in multiple narcotics investigations.  The officers ran a warrant check on Plaintiff and discovered that there was an Order for Arrest for him for failure to appear on a no operator's license charge.  The Order for Arrest, a copy of which is attached to Officer Medlin's affidavit, was issued on April 1, 2011, for the failure to

appear on the same date. The officers took Plaintiff into custody, transported him to the sheriff's office where the magistrate verified that the Order for Arrest was valid, and then turned Plaintiff over to the custody of the sheriff's office.

3.      Sgt. McGhee's Affidavit

Defendant Sgt. McGhee states in his affidavit that he is a sergeant in the special investigations unit, which includes narcotics investigations. He has been involved in over 500 narcotics investigations. The investigation of Plaintiff began on January 20, 2011, after Sgt. McGhee's unit received information from an unknown citizen regarding drug activity and sales at Plaintiff's residence. From January 21 through January 28, 2011, Officers Gonzalez and Merritt conducted surveillance on Plaintiff's residence. On January 21, Officers Gonzalez and Merritt advised Sgt. McGhee that they had observed Plaintiff engage in a suspected drug transaction with a white male. Officer Smith located this white male, later identified as Frank Stuart. Based on a consent search, Sgt. McGhee located two rocks of crack cocaine in Stuart's pocket. He was charged with possession of crack cocaine.

On January 27, Officer Gonzalez applied for and obtained an arrest warrant for Plaintiff on the charges of possession with intent to sell or distribute crack cocaine and delivery of crack cocaine. On January 28, 2011, Officers Gonzalez and Merritt were conducting surveillance on Plaintiff's house when they saw him contact a black male, later identified as Arvin Stevenson. Plaintiff and Stevenson walked behind Plaintiff's house, but only Plaintiff returned to the front of the house. The officers provided Sgt. McGhee with a description of the black male, and Sgt. McGhee located Stevenson, conducted a consent search, and found five rocks of crack cocaine

on Stevenson. Stevenson told Sgt. McGhee that he had just purchased the crack cocaine from Plaintiff. Sgt. McGhee advised Officers Gonzalez and Merritt of this information, and they arrested Plaintiff on the January 27 warrant.

On March 28, 2011, another drug investigation of Plaintiff began after Sgt. McGhee's unit received a complaint of a drug operation being conducted at Plaintiff's house. Officers Merritt and Corl began surveillance of Plaintiff's residence. They witnessed a suspected drug transaction between Plaintiff and a Hispanic male later identified as Sebastian Hernandez. Officer Merritt gave Sgt. McGhee a description of Hernandez as Hernandez left the house running. Sgt. McGhee and Defendant Overcash located Hernandez and observed him walk into the Acapulco Restaurant. Sgt. McGhee approached Hernandez, and while being questioned about why he was at Plaintiff's residence, Hernandez handed Sgt. McGhee ten bags of marijuana. Hernandez said, "I didn't buy it he [Plaintiff Joshua Howie] just gave it to me to make some money and told me to get him back when I was right." (Aff. [Doc. #55] at 4 (bracketed addition in original).) Sgt. McGhee understood this to mean that Plaintiff had given Hernandez the marijuana to sell, and after the sale(s), Hernandez was to pay Plaintiff. Sgt. McGhee seized the drugs but told Hernandez he would not be going to jail at that time due to his cooperation and assistance. The ten individual bags of marijuana weighed out to a total of eighteen grams.

Sgt. McGhee went to a state court magistrate and applied for warrants for Plaintiff's arrest. The magistrate found probable cause and issued warrants for Plaintiff on charges of possession with intent to sell/deliver marijuana and sale of marijuana. Sgt. McGhee notified

Officers Merritt and Corl of the issuance of the warrants and advised them to notify him when Plaintiff left his residence so that he could serve the warrants. Around 7 p.m. that evening, the officers advised Sgt. McGhee that Plaintiff was leaving his house with another person on his moped. Officer Overcash located the moped and performed a felony stop of it, which is department policy when arresting a felony suspect. After placing Plaintiff under arrest, he was transported to the police department.

At the police station, Sgt. McGhee and Officer Merritt interviewed Plaintiff. He denied selling marijuana to Hernandez. The interview is recorded on a CD which is part of the record. Based upon the interview of Plaintiff and the statements of Hernandez, Sgt. McGhee and Officer Merritt believed that Plaintiff had conspired with Hernandez to buy and sell marijuana, but that Plaintiff had not sold the marijuana to Hernandez. Officer Merritt advised Plaintiff that he would be charged with conspiracy to sell/deliver marijuana, but that the warrants for possession with intent to sell/deliver marijuana and sale of marijuana would be rescinded, and those charges were eventually dismissed. Officer Merritt took Plaintiff to the magistrate who found probable cause to issue a Magistrate's Order for Plaintiff's arrest on the charge of conspiracy to sell/deliver marijuana and placed Plaintiff on a $30,000 bond.

4.      Officer Rummage's Affidavit

Officer Rummage submitted an affidavit [Doc. #56] stating that he is the official custodian of records for the entire Concord Police Department. He certifies that the CDs and documents submitted in the case are those kept in the regular course of business of the police department.

5.      Officer Ramos' Affidavit

Defendant Officer Ramos responds in his affidavit [Doc. #57] to Plaintiff's allegations concerning the alleged harassment that Plaintiff contends he experienced on May 27, 2011, when Officer Ramos investigated Plaintiff's moped. Officer Ramos states that he received a complaint that a citizen was following an individual riding a moped and that the citizen, Chris Daniel, believed that the moped had been stolen from him. Officer Ramos responded to the caller's location and located the moped. Plaintiff was operating the moped. Officer Ramos recognized the moped as belonging to Plaintiff. Mr. Daniel then looked more closely at the moped and said it was not the stolen moped. Mr. Daniel and Officer Ramos then left the scene. The officer did not take any photos of Plaintiff's moped.

6.      Officer Corl's Affidavit

Officer Corl states in his affidavit [Doc. #58] that he is a patrol officer and has participated in about 50 narcotics investigations. On March 28, 2011, he and Officer Merritt began surveillance of Plaintiff's house based upon a complaint of drug operations at that location. At about 5:00 p.m. he witnessed a Hispanic male later identified as Sebastian Hernandez walk onto the front porch of Plaintiff's residence and make contact with Plaintiff at the door. He watched Plaintiff and Hernandez talk for about a minute and then saw Hernandez and Plaintiff "do a hand-to-hand transaction." Based upon his training and experience, Officer Corl "can testify that this type of hand-to-hand interaction is indicative of a drug transaction." (Id. at 2.)

After this transaction, Hernandez began to run toward Cabarrus Avenue and Officer Merritt relayed the information by radio to Sgt. McGhee and Officer Overcash, and gave a description of Hernandez. Officer Overcash and Sgt. Merritt advised Officer Corl that they located Hernandez a short distance away, that they had located ten bags of marijuana on his person, and that Hernandez told them that Plaintiff had given him the marijuana. Sgt. McGhee advised Officers Corl and Merritt once he had obtained warrants for Plaintiff on charges of possession with intent to sell/deliver marijuana and the sale of marijuana. After receiving this information, Officer Corl observed Plaintiff leave his house and get on his moped with another subject. Officer Merritt advised Sgt. McGhee of this information, and Sgt. McGhee and Officer Overcash located Plaintiff and arrested him on the warrants. This ended the surveillance of Plaintiff's house.

7.    Officer Gonzalez's Affidavit

Officer Gonzalez is a patrol officer with the Concord Police Department. During his career he has been a member of several different divisions of the department, including the narcotics division. He and Officer Merritt began surveillance on Plaintiff's residence on January 21, 2011, when the department received information from an unknown citizen of drug activity and sales at that location. The officers continued their surveillance from January 21 until January 28. Officer Gonzalez states that he witnessed Plaintiff make several transactions, which he recognized to be drug transactions, including multiple transactions from within a red Dodge Durango that was parked in the driveway of Plaintiff's residence.

On January 21, he observed a white male, later identified as Frank Stuart, walk onto Plaintiff's property and briefly meet with Plaintiff. Plaintiff then entered his residence for about a minute, came back out and walked to Stuart and placed something in Stuart's hand. Stuart then gave something to Plaintiff and walked away. Based upon his training and experience, Officer Gonzalez states that he can testify that this behavior is consistent with drug activity/transactions. Stuart left Plaintiff's residence, but returned a few minutes later. They made another exchange. Stuart walked away again putting what he received from Plaintiff in his pocket. Officer Merritt radioed this information to Sgt. McGhee who located Stuart across from Plaintiff's house. Stuart had two rocks of crack cocaine in his pocket. Stuart was arrested and charged with possession of crack cocaine.

On January 27, 2011, Officer Gonzalez obtained a warrant for Plaintiff on charges of possession with intent to sell or distribute crack cocaine and sale and delivery of cocaine, based on his observations and the crack cocaine found on Mr. Stuart.

On January 28 at about 3:00 p.m., Officer Merritt and Officer Gonzalez were conducting surveillance at Plaintiff's home when they saw a black male, later identified as Arvin Stevenson, approach Plaintiff and make contact with him. Plaintiff and Stevenson walked to the right side of Plaintiff's residence toward the rear of the residence. After a couple of minutes, Plaintiff returned to the front of the residence, but Stevenson did not. The officers radioed Sgt. McGhee and informed him of this information. Sgt. McGhee advised Officers Merritt and Gonzalez that he located Stevenson and found five rocks of crack cocaine in his possession. Sgt. McGhee also told them that Stevenson said that he had just purchased the crack cocaine from Plaintiff for

$100. Officers Merritt and Gonzalez then decided to approach Plaintiff who was sitting in the Dodge Durango. They attempted to arrest Plaintiff on the warrants obtained the prior day, but Plaintiff kept reaching behind his back and was clinching his left hand as if he were holding onto something. Plaintiff tried to swallow a white baggie containing cocaine, but when he was tazed he spit out the baggie with the drugs.

8. Defendant Captain Greene's Affidavit

Defendant Captain Greene investigated the formal complaints against several officers made by Plaintiff, his mother and step-father. (Aff. [Doc. #60].) They complained of unlawful arrest and false imprisonment of Plaintiff, an excessive bond, and unlawful search and seizure. Defendant Greene concluded that most of the complaints regarding the charges against Plaintiff were matters for the court to hear as part of Plaintiff's criminal cases, and that the officers' actions were lawful and within departmental guidelines.

9. Officer Merritt's Affidavit

Officer Merritt states in his affidavit [Doc. #61] that he was a member of the department's special investigations unit from 2008 until August 2012 and participated in about 500 narcotics investigations. He recounts the surveillance of Plaintiff's house that he and Officer Gonzalez conducted from January 21 through 28. He states that he witnessed several transactions by Plaintiff that he recognized to be drug transactions, including the one on January 21, 2011, involving Frank Stuart described above by Officer Gonzalez. He also sets out what he saw surrounding the January 28 transaction that Plaintiff made with Arvin Stevenson. He

describes arresting Plaintiff on January 28, finding a white baggie containing cocaine on Plaintiff, and Plaintiff trying to swallow some cocaine.

Officer Merritt states that Plaintiff gave a statement following his arrest in which he admitted to selling drugs for about two months. This statement is attached to Officer Merritt's affidavit. Officer Merritt also describes his surveillance of Plaintiff's home on March 28, 2011, with Officer Corl when he saw the "hand-to-hand interaction" of Plaintiff with Sebastian Hernandez. Based upon his training and experience, he "can testify that this type of hand-to-hand interaction is indicative of a drug transaction." (Id. at 6.) Officer Merritt also describes interviewing Plaintiff on March 28, during which Plaintiff denied selling marijuana to Sebastian Hernandez. Officer Merritt believed after the interview, and considering the statement of Hernandez, that Plaintiff had not sold the marijuana to Hernandez and had not been in possession of that marijuana, but had conspired to sell and buy the marijuana. He told Plaintiff that the charges for possession with intent to sell and for sale of marijuana would be dropped, and they were. Plaintiff was charged with conspiracy to sell/deliver marijuana.

Officer Merritt also states that Plaintiff pled guilty on June 27, 2011, to felony counts of Sale Delivery of Schedule II Controlled Substance and Possession with Intent to Sell/Distribute Cocaine (Offenses committed on 1/21/11; felony counts of Sell/Deliver Schedule II Controlled Substance, Possession with Intent to Sell/Distribute Cocaine, and misdemeanor counts of Simple Possession of Schedule VI Controlled Substance and Resist Public Officer (Offenses committed on 1/28/11). In return for these pleas, the State agreed to consolidate the charges for sentencing, and that Plaintiff would receive a suspended sentence with no active or

split sentence. In addition, as part of the plea agreement, the March 28, 2013 charge of Conspiracy to Sell/Deliver Marijuana was dismissed.

Attached to Officer Merritt's affidavit is a copy of Plaintiff's indictment [Doc. #61-10 at 19] returned April 11, 2011, for conspiring to sell or deliver marijuana with Sebastian Hernandez on March 28, 2011. The face of the indictment reflects that the only witness to be sworn by the grand jury and to testify about this offense was "B. Field, CPD."

C.    Plaintiff's Evidence

Plaintiff has also submitted several affidavits to support his response to Defendants' Motion for Summary Judgment.

1.    Affirmation of Antoinette Posey

Antoinette Posey (Plaintiff's mother) describes a conversation she overheard between Sebastian Hernandez and Ronald Posey (Plaintiff's step-father) [Doc. #67-7 at 2] on May 25, 2013. According to Ms. Posey, Sebastian Hernandez said that "Officer McGhee was deliberately lying in his report and there was no hand to hand drug transaction." She says that she takes four medications daily as a result of the actions taken to "railroad" her son.

2.    Affirmation of James Black

James Black submitted his affidavit [Doc. #67-7 at 4] stating that in June 2011, he was at Lupita's Tire and Mechanic Shop in Cabarrus County when he observed an altercation between Plaintiff and a Hispanic male. He says that the Hispanic male said, "Josh I don't want no trouble Todd McGhee wanted me to keep quiet about the drugs. I did what he told me to do!" (Id.)

3.      Affirmation of Ronald Posey

Only the last page of Ronald Posey's affidavit was attached initially [Doc. #67-7 at 6],

however Plaintiff later submitted the complete statement [Doc. #70-1].  Mr. Posey states that

he is the one who had the conversation with Sebastian Hernandez on May 25, 2013, to which

Antoinette Posey refers in her affidavit.  According to Mr. Posey, Sebastian Hernandez said that

Sgt. McGhee "lied on him" and that there was no hand to hand transaction between him and

Plaintiff.

4.      Sacerio Carmon Affidavit

Sacerio Carmon submitted his affidavit [Doc. #67-7 at 7], stating that he accompanied

Plaintiff to Lupita's Tire Shop in June 2011 for Plaintiff to confront Sebastian Hernandez.

Hernandez said, as Plaintiff approached him, "Josh I don't want no trouble! Todd McGhee told

me to keep my mouth shut!"

5.      Cenquarius Lawing Affidavit

Cenquarius Lawing states in his affidavit [Doc. #67-7 at 9-10] that he overheard the

conversation between Sebastian Hernandez and Plaintiff on May 25, 2013.  He states that

Sebastian Hernandez told Plaintiff that "two officers took his drugs, one told him to leave, and

keep his mouth shut."  He says that Hernandez acted as if the drugs were his and that Plaintiff

was an innocent man.

6.      Plaintiff's "Transcript"

Plaintiff submitted a purported "transcript" [Doc. #71] of the conversation he had with

Sebastian Hernandez and Cenquarius Lawing on May 25, 2013.  This is one of the documents

that Defendants have moved to strike. There is no indication how the transcript was created or by whom. There is no certification that the transcript is a true and correct version of any type of recording.

Hernandez says in the transcript that the officers who found marijuana on him assumed that it came from Plaintiff, but that this assumption was wrong and Plaintiff was "innocent." (Id. at 2.) Hernandez says, however, that he never told the officers that the marijuana was his (Hernandez's). (Id. at 3-4.) In the transcript, Hernandez acknowledges that he came to Plaintiff's home on March 28, 2011, that he offered to sell marijuana to Plaintiff, that officers subsequently stopped him and recovered marijuana from him, that officers told him "Don't tell nobody," that officers thought he had gotten the marijuana from Plaintiff, and that he "didn't say anything." Hernandez also acknowledges that he shook hands with Plaintiff when he was at Plaintiff's house that day.

II.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is appropriate only when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of

material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  (Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).)  A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

B.      Claims Related to the March 28, 2011 Arrest

Plaintiff's primary contention is that he was wrongly arrested on the charges related to the 18 grams of marijuana seized by the Concord police from Sebastian Hernandez on March 28, 2011.  Plaintiff brings claims against Sgt. McGhee and Officer Merritt related to the March 28 events, alleging due process and equal protection violations as well as false arrest, false imprisonment, and malicious prosecution.

To the extent Plaintiff brings a claim for an "equal protection violation," an "equal protection violation occurs in one of two ways: (1) when the government explicitly classifies people based on race, or (2) when a law is facially neutral, but its administration or enforcement disproportionately affects one class of persons over another and a discriminatory intent or animus is shown."  Monroe v. City of Charlottesville, Va, 579 F.3d 380 (4th Cir. 2009); see also City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (the Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike.").  The Equal Protection Clause "prohibits selective enforcement of the

law based on considerations such as race," including investigatory stops and arrests protected by the Fourth Amendment. <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996). However, in this case, Plaintiff has not set out any evidence to support his claim of an equal protection violation as a result of the March 28 events. There is no evidence of how Plaintiff was treated differently from similarly-situated individuals of another race, no evidence of intentionally discriminatory application of the laws on the basis of race, and no evidence of explicit classification based on race. Therefore, summary judgment should be granted as to his equal protection claim.

Plaintiff's remaining § 1983 claims for a due process violation, false arrest, false imprisonment, and malicious prosecution are all analyzed under the Fourth Amendment. <u>See</u> <u>Brown v. Gilmore</u>, 278 F.3d 362, 367 (4th Cir. 2002) (analyzing § 1983 false arrest claim as a claim for an unreasonable seizure in violation of the Fourth Amendment); <u>Brooks v. City of</u> <u>Winston-Salem, N.C.</u>, 85 F.3d 178, 184 (4th Cir. 1996) ("[T]he Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial."); <u>Evans v. Chalmers</u>, 703 F.3d 636, 647 (4th Cir. 2012) (noting that a claim of malicious prosecution is "properly understood" as a Fourth Amendment claim for unreasonable seizure).[3]

---

[3] The Court notes that Defendants have presented evidence, including a Transcript of Plea, to establish that on June 27, 2011, Plaintiff pled guilty to charges from the January 2011 investigation, and in return for the plea, the state agreed to consolidate the charges for sentencing with a suspended sentence, and also agreed to dismiss the March 28, 2011 charge of Conspiracy to Sell/Deliver Marijuana. In the circumstances, there may be some issue with respect to whether Plaintiff can overcome the bar set in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In this regard, some courts have held that dismissal of charges for reasons other than innocence, including as part of a plea bargain on other charges, would not satisfy the <u>Heck</u> "favorable termination" requirement. <u>See, e.g.</u>, <u>Fritz v. Akosomitas</u>, No. 2:13-3532, 2015 WL 1346311 (D.S.C. Mar. 23, 2015). However, in the present case Plaintiff's § 1983 claims would not necessarily invalidate the underlying conviction on the January 2011 charges, and the Court therefore notes the potential <u>Heck</u> issue but nevertheless proceeds to further consideration of Plaintiff's claims.

With respect to these claims, there is no dispute that Plaintiff was arrested on March 28 pursuant to a warrant issued by a neutral magistrate charging Plaintiff with possession with intent to sell/deliver marijuana and sale of marijuana. After Plaintiff was arrested and interviewed, he was taken to the magistrate, who found probable cause to issue a Magistrate's Order for Plaintiff's arrest on a charge of conspiracy to sell/deliver marijuana. The magistrate then placed Plaintiff on a $30,000 bond. "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." <u>Messerschmidt v. Millender</u>, 132 S. Ct. 1235, 1245 (2012). However, the issuance of the warrant does not end the inquiry if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue, . . . for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Id.</u> (internal quotations omitted). In this regard, the issuance of a warrant will not "shield an officer when the underlying affidavit includes deliberate and reckless misstatements and omissions." <u>Miller v. Prince George's County, Md</u>, 475 F.3d 621, 632 (4th Cir. 2007). Thus, a claim for unreasonable seizure may exist if the police officer "deliberately supplied misleading information that influenced the decision," <u>Durham v. Horner</u>, 690 F.3d 183 (4th Cir. 2012), or if the "magistrate is misled by statements that the officer knows or should know are false," <u>Miller</u>, 475 F.3d at 632.

In this case, Sgt. McGhee obtained the arrest warrants on March 28 for Plaintiff on the charges of possession with intent to sell/deliver marijuana and sale of marijuana. (McGhee Aff. [Doc. #55] at 5.) As a sergeant in the special investigations unit, Sgt. McGhee oversaw the

investigation into drug sales being conducted from Plaintiff's house.  (Id. at 2.)  He knew of the January 21 and 28 sales of cocaine that Plaintiff had made to Frank Stuart and Arvin Stevenson at Plaintiff's house.  (Id. at 2-3.)  He knew on March 28 that another complaint had been made of a drug operation being maintained from Plaintiff's house.  (Id. at 3.)  He knew that on March 28, Officers Merritt and Corl had witnessed a suspected drug transaction between Plaintiff and Sebastian Hernandez.  (Id. at 4.)  He stopped Hernandez and obtained 18 grams of marijuana from Hernandez shortly after the suspected drug transaction occurred.  (Id.)  According to Sgt. McGhee, Hernandez made a statement that led Sgt. McGhee to conclude that Plaintiff had just given the marijuana to him.  (Id.)  These facts form the basis for Sgt. McGhee obtaining the above-mentioned arrest warrants for Plaintiff.

Plaintiff's position is that the suspected drug transaction reported by Officers Merritt and Corl was simply him shaking hands with Sebastian Hernandez, and that there was no exchange of marijuana or any other drug.  There is, therefore, no dispute that Mr. Hernandez came to Plaintiff's house and that their hands made contact.  In addition, Defendants have presented a surveillance video of the interaction between Plaintiff and Hernandez on March 28, 2011.  (Merritt Aff. [Doc. #61] Ex. A.)  In the video, an individual is standing at the door of what is apparently Plaintiff's residence, speaking to Plaintiff.  At the end of the conversation, the individuals engage in hand-to-hand contact that supports the officers' description of a suspected drug transaction.

Plaintiff submits affidavits in an attempt to show that the suspected drug transaction between him and Hernandez was not a drug transaction.  To be considered on this summary

judgment motion, however, affidavits must conform to certain rules. "[S]everal circuits, including the Fourth Circuit, have stated that hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highway Contractors Ass'n v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991); see also Rule 56(c)(4) (providing that an affidavit or declaration used to support or oppose a motion must "set out facts that would be admissible in evidence"); Adefila v. Davita, Inc., No. 1:13cv940, 2015 WL 268983 at *6 (M.D.N.C. Jan. 20, 2015) ("[S]ummary judgment affidavits that are conclusory or based upon hearsay shall not be considered.").

The affidavits relied upon by Plaintiff and submitted by Antoinette Posey, James Black, Ronald Posey, Sacerio Carmon, and Cenquarius Lawing all report what Sebastian Hernandez supposedly said in an out-of-court statement and are relied upon for the truth of the matter asserted in the statements. Therefore, the affidavits rely upon hearsay and are not cognizable on this Motion. See Fed. R. Evid. 801(c); Maryland Highway Contractors, 933 F.2d at 1251. No exception to the hearsay rule applies to such statements. Therefore, these affidavits are not properly considered. Moreover, these affidavits, even if considered, do not create a genuine issue of material fact, and in particular do not present any evidence that Hernandez told Sgt. McGhee that the drugs belonged to him rather than Plaintiff. Plaintiff's purported "transcript" of his conversation with Hernandez is hearsay as well, and cannot be considered on this Motion. Even if the "transcript" is considered, it too does not help Plaintiff establish that Hernandez told Sgt. McGhee that the drugs belonged to him. Rather, in the "transcript" when Plaintiff asks Hernandez, "You didn't never tell them it was your reefer?", Hernandez replied, "No! The thing

is they just took it from me and I said all right man. [sic] you guys got me, go ahead and take it, do whatever the F-k what you want with it."

Plaintiff's evidence fails to establish a genuine issue of material fact regarding what Sgt. McGhee knew when he obtained the initial warrants against Plaintiff on March 28. Even under Plaintiff's unsupported version of events, officers believed that the marijuana confiscated from Hernandez had come from Plaintiff, and Hernandez did not correct that understanding. Therefore, the officers' interaction with Hernandez, added to the other information known by Sgt. McGhee, gave him probable cause to believe that Plaintiff had at least committed the offense of possession with intent to sell/deliver marijuana and the offense of delivery of marijuana. The arrest of Plaintiff was subsequently made pursuant to a warrant, and Plaintiff has not presented any evidence to establish that Sgt. McGhee made any deliberately or recklessly false statements to mislead the magistrate who issued the warrant. Plaintiff's arrest was therefore reasonable and his Fourth Amendment rights were not violated.

Following Plaintiff's arrest on March 28, he was interviewed by Sgt. McGhee and Officer Merritt.[4] Following this interview, Officer Merritt took Plaintiff to a magistrate and an additional warrant was drawn for conspiracy to sell/deliver marijuana. (McGhee Aff. [Doc.

---

[4] A recording of the interview was submitted by Defendants. In the interview, Plaintiff acknowledges that Hernandez came to his house and offered to sell him marijuana. Plaintiff says that he wanted Hernandez to "front" him a bag because he only had $5.00. Plaintiff states that did not purchase marijuana from Hernandez at that time because he did not have enough money. Plaintiff says that he knew that Hernandez was selling marijuana for $10.00 a bag because Plaintiff had been "riding with him" on prior occasions. Plaintiff also says that Hernandez had been at his house a few nights before and they had smoked marijuana, and that Hernandez offered marijuana for sale daily in the area and usually kept it in a bookbag in his car. Plaintiff insists that he was not the source of that marijuana and that he has already told officers "where I get my reefer from." Thus, although Plaintiff denied that he was the source of the marijuana recovered from Hernandez that day, his statement did indicate a history of dealings with Hernandez involving controlled substances.

#55] at 5-6.)  Plaintiff was then arrested on that charge.  The warrant provided probable cause

for that arrest, and the warrant was supported by the information known to Officer Merritt.

(See Merritt Aff. [Doc. #61] at 7-8.)  Plaintiff has not presented any evidence to establish that

Officer Merritt made deliberately or recklessly false statements to mislead the magistrate into

issuance of that arrest warrant.

Accordingly, summary judgment should be granted in favor of Defendants on Plaintiff's

claim of a Fourth Amendment violation resulting from his March 28, 2011, arrest and his related

claims.

C.      Eighth Amendment excessive bond claim

Plaintiff claims that his $50,000 total bond ($30,000 from the March 28 arrest and

$20,000 from the April 1 arrest) was excessive.  (Compl. [Doc. #2] at 4-5.)  Plaintiff has not

produced any evidence that any Defendant set the amounts of these bonds or bail.  In North

Carolina, the state court magistrates set the amount of bail, and there is no evidence that this

procedure was not followed in Plaintiff's cases.  See Haizlip v. Richardson, No. 1:11CV376,

2012 WL 2838386 (M.D.N.C. July 10, 2012) (recommending dismissal of plaintiff's Eighth

Amendment excessive bail claim against police officers because there was no showing that police

officers had the authority or actually performed the act of setting the allegedly excessive bail);

Moore v. Evans, 476 S.E.2d 415, 426 (N.C. Ct. App. 1996) (holding that defendant police

officer was entitled to summary judgment on an Eighth Amendment excessive bail claim

because the bail was set by a magistrate instead of the defendant).[5]  Summary judgment is appropriate in favor of Defendants on this claim.

       D.      Excessive Force during March 28, 2011, arrest

Plaintiff complains of the manner in which Officer Overcash arrested him on March 28, 2011.  Plaintiff claims that Officer Overcash "did at a high rate of speed swerve in front of plaintiff and friend Sacerio Carmon while on scooter" and "jumped out of his police unit and drew his gun."  (Compl. [Doc. #2] at 5-6.)

Plaintiff had the right to be free from unreasonable seizure under the Fourth Amendment, which includes the right to be free from an arrest or seizure effectuated by excessive force.  Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006).  The issue whether an officer used excessive force to effect an arrest is analyzed under an "objective reasonableness" standard.  Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 732-33 (4th Cir. 2013).  The Supreme Court has made clear that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989).  In addition, "[i]nvestigating officers may take such steps as are reasonably necessary to maintain the status quo and to protect their safety during an investigative stop." United States v. Taylor, 857 F.2d 210, 213 (4th Cir.1988) (citing United States v. Hensley, 469 U.S. 221, 235 (1985)).

Defendants submitted the dashcam video from Officer Overcash's patrol vehicle which shows the stop made of Plaintiff on March 28.  Plaintiff does not dispute the authenticity of that

---

[5] In a separate suit (No. 1:14cv263), Plaintiff attempted to assert claims against the state magistrates, but those claims were dismissed based on absolute judicial immunity.

video, which the Court has viewed. Officer Overcash was making a felony drug arrest when he stopped Plaintiff, pursuant to a warrant supported by probable cause. Plaintiff was one of two persons on the moped while the officer was alone at the time of the initial stop. The dashcam video shows Officer Overcash's patrol car approach the moped head-on causing the moped to stop. There is no noticeable swerving of either vehicle and neither vehicle was traveling at a high speed. In fact, Officer Overcash had to stop at a stop sign just before encountering Plaintiff's moped. Officer Overcash exits his vehicle with his gun drawn, which is not alone unreasonable given the circumstances and the pending felony warrants. See United States v. Taylor, 857 F.2d 210, 213-14 (4th Cir. 1988) ("Although blockading an automobile and approaching a suspect with drawn weapons are extraordinary measures, such police procedures have been justified in this circuit as a reasonable means of neutralizing potential danger to police and innocent bystanders."). Therefore, summary judgment should be granted in favor of Officer Overcash on Plaintiff's claim of an unreasonable use of force to effect his arrest on March 28.

      E.     April 13, 2011 arrest

Plaintiff was arrested on April 13, 2011, by Officer Medlin on an outstanding order for arrest for failure to appear. Plaintiff alleges that this charge was later dropped because he was in jail at the time of the missed court appearance. There is no cognizable evidence, however, that Officer Medlin knew that Plaintiff was incarcerated at the time he failed to appear in court. Plaintiff makes allegations regarding what occurred on April 1, the date he was supposed to appear in court. However, his allegations are not supported by cognizable evidence showing

what Officer Medlin knew on April 13.[6]  Further, there is no dispute that the magistrate determined that the order for arrest was still valid when Plaintiff was arrested and appeared before him.  Based on all of the evidence presented, there is simply no evidence that would allow Plaintiff to challenge Officer Medlin's reliance on the outstanding warrant.  Therefore, Officer Medlin's arrest of Plaintiff on April 13 did not violate any of Plaintiff's constitutional rights.

F.    Officer Ramos and the May 27, 2011 incident

Plaintiff complains of being harassed by Officer Ramos on May 27, 2011, when the officer met with a man who had reported to police that he thought the moped Plaintiff was operating had been stolen from him.  It is undisputed that after the man examined Plaintiff's scooter, he saw that it was not his stolen scooter, and he and the officer left the area.  (Compl. [Doc. #2] at 7-8.)  Officer Ramos confirms in his affidavit [Doc. #57] that he simply responded to the citizen's complaint and determined that the moped was not stolen.  Plaintiff has not presented any facts showing that his constitutional rights were violated by Officer Ramos on May 27, 2011.  Summary judgment should be granted in favor of Officer Ramos.

G.    Captain Greene and his investigations

Captain Greene conducted the police department's internal investigations on the complaints made by Plaintiff and his family.  Plaintiff claims that Captain Greene "covered up for his mens' corruption."  (Compl. [Doc. #2] at 8.)  Plaintiff appears to at least partially base

---

[6] Plaintiff does contend that Officer Medlin should have known he was in custody because Officer Medlin delivered the earlier warrants to him in custody on April 1, 2011.  (Pl. Resp [Doc. #67] at 9).  However, the Police Reports show that those warrants were delivered by Officer Payne on March 31, 2011, or shortly after midnight in the early morning of April 1, 2011.  Even if Officer Medlin participated in this delivery as Plaintiff contends, there is no evidence that Officer Medlin knew that Plaintiff was still in custody throughout the remainder of the day on April 1 when Plaintiff failed to appear, or that Officer Medlin otherwise possessed sufficient information to doubt the validity of the warrant that was shown as outstanding on April 13, 2011.

his claim against Captain Greene on a theory of respondeat superior, but that doctrine is not available under § 1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). Moreover, Plaintiff has not established that any of Captain Greene's subordinate officers violated any of Plaintiff's constitutional rights. Therefore, summary judgment should be granted in favor of Captain Greene on all claims against him. <u>See</u> <u>Shaw v. Stroud</u>, 13 F.3d at 799 (setting out requirements for supervisory liability).

H.      42 U.S.C. § 1984 and § 1985

Plaintiff cites in his Complaint 42 U.S.C. §§ 1984 and 1985 in addition to § 1983. However, there is no evidence of race or class-based animus to support a claim under § 1985. In addition, there is no current § 1984. Therefore, summary judgment against Plaintiff is appropriate under these sections.

I.      Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. (Defs' Br. [Doc. #51] at 18-19.) A court generally considers first in the qualified immunity analysis whether a constitutional violation has occurred. <u>Williams v. Ozmint</u>, 716 F.3d 801, 805 (4th Cir. 2013). The above discussion shows that Plaintiff has not created a genuine issue of material fact with respect to any possible constitutional violation committed by Defendants. Therefore, there can be no liability as to Defendants, and the Court need not consider further the qualified immunity defense.

J.      Sovereign Immunity

Defendants also argue that sovereign immunity applies to any state law claims against them in their official capacities.  In considering this contention, the Court notes that the bases for this action listed by Plaintiff in his Complaint [Doc. #2 at 2] are 42 U.S.C. §§ 1983, 1984, and 1985.  Therefore, it is unclear whether Plaintiff intended to separately assert state law claims. Moreover, the claims that may arise under state law such as false arrest, false imprisonment, and malicious prosecution raise issues similar to those addressed above with respect to the § 1983 claims.  Even if Plaintiff intended to raise these issues as state law claims, based upon the above discussion and the findings of probable cause, such claims would be baseless.  See, e.g., Cox v. Roach, 723 S.E.2d 340, 350 (N.C. Ct. App. 2012).

K.      Defendants' Motion to Strike

Defendants have moved to strike [Doc. #72] two filings of Plaintiff: his Response to Defendants' Reply [Doc. #70] on the Summary Judgment Motion; and his "Transcript" of his conversation with Sebastian Hernandez [Doc. #71].

In considering the motion, the Court notes that Local Rule 7.3(h) allows for the filing of a reply brief, but not a sur-reply brief.  Plaintiff's Response [Doc. #70] is a sur-reply brief and, thus, is not allowed under this Court's local rules.  Although the Court would normally strike the document, Plaintiff attached to that document the full affidavit of Ronald Posey, discussed above.  Therefore, the Court will allow Plaintiff's "Response" and attachment to remain on the docket.

Defendants move to strike Plaintiff's "Transcript" of his conversation with Sebastian Hernandez because it is hearsay. Because the Court has noted the hearsay problem and has discussed the "Transcript" above, the Court will allow it to remain on the docket.

III.     CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Strike [Doc. #72] is DENIED.

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #50] be granted, and that this action be dismissed.

This, the 30th day of March, 2015.

                                   /s/ Joi Elizabeth Peake
                              United States Magistrate Judge